**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lisa A. Denunzio,                )<br>                                              )<br>            Plaintiff,             )<br>                                              )<br>vs.                                       )<br>                                              )<br>Nancy A. Berryhill, Acting Commissioner)<br>of the Social Security Administration, )<br>                                              )<br>            Defendant.          )<br>_____) | No. CV 17-231-TUC-LAB<br><br>**ORDER** |

The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). (Doc. 1, pp. 1-2)

The Magistrate Judge presides over this case pursuant to 28 U.S.C. § 636(c) having received the written consent of both parties. *See* FED.R.CIV.P. 73; (Doc. 14)

The ALJ in this case failed to give specific and legitimate reasons for discounting the opinion of the treating physician. The ALJ also failed to give clear and convincing reasons for discounting the claimant's subjective testimony. The case is remanded for payment of benefits.


PROCEDURAL HISTORY

In August of 2011, Denunzio filed applications for disability insurance benefits and for supplemental security income pursuant to Title II and Title XVI of the Social Security Act respectively. (Tr. 172-182) She alleged disability beginning on November 1, 2009, due to bipolar disorder, anxiety, depression and mood swings. (Tr. 203)

Her applications were denied initially (Tr. 116-123) and upon reconsideration (Tr. 126-132). Denunzio requested review and appeared with counsel at a hearing before Administrative Law Judge (ALJ) Norman R. Buls on January 16, 2013. (Tr. 60) In his decision, dated April 4, 2013, the ALJ found Denunzio was not disabled because her mental impairment was not severe. (Tr. 24-34) Denunzio appealed, and on June 3, 2014, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 1-3) Denunzio sought review in District Court, and on May 18, 2015, this court reversed and remanded the action to the Commissioner for further proceedings. (Doc. 480-509)

On May 9, 2016, Denunzio appeared with counsel before ALJ Charles Davis. (Tr. 407-435) In his decision, dated October 18, 2016, the ALJ found Denunzio was not disabled because there are some jobs in the national economy that she can perform despite her limitations. (Tr. 387-400) Denunzio appealed, and on March 20, 2017, the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 377-380) Denunzio subsequently filed this action appealing that final decision. (Doc. 1)

Claimant's Work History and Medical History

Denunzio was born in June of 1964. (Tr. 42) She was 52 years old when ALJ Davis issued his decision in October of 2016. (Tr. 63, 400)

Denunzio has a high school education. (Tr. 64) She last worked in 2009, when she was employed as a stocker and cashier. (Tr. 65-66) "[S]he was dismissed from her job for not showing up after periods of depression." (Tr. 373) "[S]he has gotten into verbal confrontations with supervisors in the past." (Tr. 373) Denunzio received unemployment benefits for a period of time after her dismissal. (Tr. 66)

*Mental Impairment*

In December of 2011, Andres Kerns, Ph.D., reviewed the medical record for the disability determination service and offered an opinion of Denunzio's mental impairment. (Tr. 78, 79, 84) Kerns diagnosed Denunzio with affective disorder. (Tr. 83, 84) He then evaluated

Denunzio's "B" listing criteria, which gauge the severity of her limitations. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). Kerns found Denunzio has "mild" restrictions of her daily activities; "mild" difficulties in maintaining social functioning; "mild" difficulties in maintaining concentration, persistence, or pace; and no evidence of decompensation. (Tr. 84) Kerns further opined that the medical evidence did not establish the presence of the "C" criteria, which are an alternative gauge of the extent of her mental impairment. (Tr. 84) Kerns concluded that Denunzio's mental impairment is non-severe. (Tr. 84)

In February of 2013, Denunzio was examined by Glenn Marks, Ph.D., for the disability determination services. (Tr. 74) Marks reported that Denunzio "presented with a stable mood and a varied affect." (Tr. 374) "Although she reported that she felt like she was having one of her panic-type episodes, there was no evidence of it." (Tr. 374) Her "[t]hought processes appear linear, logical and goal directed with no evidence of atypical thought processes." (Tr. 374) Marks diagnosed bipolar disorder and anxiety disorder, NOS. (Tr. 374) He listed her GAF (global assessment of functioning) as 55 to 60. (Tr. 374)

Marks opined that Denunzio had mild restriction in her ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. (Tr. 368) She had mild restriction in her ability to interact appropriately with the public, supervisors, or co-workers. (Tr. 369)

The medical record contains treatment notes from Denunzio's treating psychiatrist, Steven J. Bupp, M.D., beginning in 2009 and extending through 2016. (Tr. 264- 352, 844-886)

In January of 2013, Bupp completed a Medical Assessment form assessing Denunzio's ability to perform work-related activity. (Tr. 362-67) He rated Denunzio as having moderately severe impairment in the following areas: relating to other people, restriction of daily activities, responding appropriately to supervision in a work setting, responding to customary work pressures, performing complex tasks, performing varied tasks, and completing a normal work day/week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number/length of rest periods. (Tr. 362-363); (Tr. 486-487) Bupp also rated Denunzio as having moderate impairment in the areas of:

deterioration in personal habits; constriction of activities; ability to understand, carry out, and remember instructions in a work setting; respond appropriately to co-workers; and perform repetitive tasks. *Id.*

In January of 2013, Bupp also completed a Mental Residual Functional Capacity Assessment for Denunzio. (Tr. 364-365); (Tr. 486-487) He rated Denunzio as markedly limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual, sustain a routine without special supervision, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace, maintain socially appropriate behavior, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others. *Id.* Bupp also rated Denunzio as moderately limited in her ability to: remember locations and work procedures, understand and remember detailed instructions, work in coordination with others without being distracted, accept instructions and respond appropriately to criticism from supervisors, get along with peers without distracting them or exhibiting behavioral extremes, be aware of normal hazards and take precautions, and travel in unfamiliar places or use public transportation. *Id.*

Bupp indicated that his conclusions were based on Denunzio's self-reports, reports of others, and his own observations. (Tr. 366-367) He opined that Denunzio's short term memory is limited because she fails to work consistently and accurately. *Id.* He opined that her understanding is limited because of her frustration with failure. *Id.* He believes her sustained concentration is limited due to the limited duration of her concentration and her intermittent functioning, which has not changed with treatment. *Id.* Bupp finds her persistence is limited because she lacks motivation, interest, or joy. *Id.* Moreover, she is inconsistent and experiences anxiety. *Id.* Her social interaction is limited because she fears social interaction, has trouble assessing social cues, and has poor reactions to social situations. *Id.* Her adaptation is limited because she fails to make accurate assessments, fails to act quickly, fails to foresee adaptation needs, and has difficulty with the rate of change. *Id.* Bupp diagnosed Denunzio with bipolar affective disorder. (Tr. 367) He rated her GAF at 55. *Id.*

In April of 2016, Bupp completed a second assessment of Denunzio's ability to perform work-related activity. (Tr. 896-898) He found her to have severe limits in her ability to: understand and remember detailed instructions, work in coordination with or proximity to others, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace, respond appropriately to changes in the work setting, and be aware of normal hazards and take appropriate precautions. (Tr. 896-898) She has moderately severe limits in her ability to remember locations and work-like procedures, carry out detailed instructions, maintain attention and concentration, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain ordinary routine without supervision, interact appropriately with the public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers, maintain socially appropriate behavior, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. *Id.* Bupp opined that Denunzio is likely to miss work more than three times a month. (Tr. 899) Bupp explained that his assessment is caused by her "severely brittle bipolar condition with recent prolonged medical hospitalization for life threatening drug reaction to Lamictal." (Tr. 899)

*Hearings*

On January 16, 2013, Denunzio appeared with counsel at a hearing before ALJ Buls. (Tr. 60) She testified that she was born in June of 1964. (Tr. 63) She has a high school education. (Tr. 64) In 2009, she worked in a grocery store as a stocker and cashier. (Tr. 65-66)

Denunzio received unemployment benefits up to the second quarter of 2011. (Tr. 66) She stated that if she had been offered a job she would have taken it, but she did not know if she would have been able to work eight hours a day. (Tr. 75) She stated, "[S]ometimes I just can't keep focused on it. My mind just - - it wanders, and it's very hard for me. And if I don't understand something or I was told to do something it would frustrate me." (Tr. 75)

Denunzio testified that she cannot work because her medicines make her tired and give her severe headaches and nausea. (Tr. 67) Also, she has severe panic attacks. (Tr. 67) If she

is having a good day, she will "go outside, walk, go to the store, come home." (Tr. 68) If she is having a bad day, she will stay in bed and sleep. (Tr. 68) Sometimes she neglects the laundry and housekeeping for more than two weeks. (Tr. 68) She can cook, crochet, and watch television. (Tr. 68) She goes to the store or the library with her roommate. (Tr. 68) She can spend 45 minutes in the grocery store, but if it is too crowded, she will have to leave. (Tr. 69) She stated, "I can't breathe, I feel like everybody's closing in on me and I get out, break out into hot sweats." (Tr. 69)

Denunzio takes medication, but she experiences side effects such as severe headaches and nausea. (Tr. 70) If she has a headache, she will lay down in a dark room for an hour or so. (Tr. 70) She had bipolar symptoms in 2005. (Tr. 71) Since then, she has experienced depression and anxiety. (Tr. 71) She spends three out of seven days in bed crying. (Tr. 71)

In 2010, Denunzio took some skills classes four or five hours a day for about four months. (Tr. 72-73) She could not get any help from her instructor, so she did not finish the program. (Tr. 73) She can read the newspaper, but if she tries to learn something, she needs to get help or she will become frustrated. (Tr. 73-74) She can watch a two-hour movie, but she might not understand it. (Tr. 74)

On May 9, 2016, Denunzio appeared with counsel before ALJ Davis. (Tr. 407) Miriam Sherman, M.D., testified as an expert. (Tr. 387, 409) Sherman agreed with the diagnosis of generalized anxiety disorder. (Tr. 401-411) She stated that Denunzio's impairments do not meet or equal a listing. (Tr. 411) Sherman opined that Denunzio has mild restrictions of daily activities, moderate difficulty maintaining social functioning, mild difficulty maintaining concentration, and no episodes of decompensation. (Tr. 411-412) She has some limitations in contact with the public. (Tr. 411-412) Sherman stated that Bupp's records from January 2013 are not internally consistent. (Tr. 412) Bupp stated that many of Denunzio's limitations are marked. (Tr. 412) He stated one month later, however, that "there are no problems with concentration." (Tr. 413); (Tr. 422)

Christopher Salvo testified as a vocational expert. (Tr. 409, 416) Salvo considered a hypothetical claimant limited to simple, routine tasks and occasionally more complex tasks with

- 6 -

only occasional contact with the general public on a superficial work basis. (Tr. 417-418) Such a person could not perform Denunzio's past relevant work as a retail cashier/checker. (Tr. 417-418) Such a person could work as a small products assembler, DOT code 706.684-022, a production assembler, DOT code 706.687-010, or car washer, DOT code 915.663-010. (Tr. 418) Salvo testified that a person with marked functional limitations or moderately severe functional limitations as described by Bupp would not be able to perform any work. (Tr. 419-421) Salvo further testified that a person could not miss two days of work per month and remain employed. (Tr. 433)

Denunzio testified that she suffers from panic attacks. (Tr. 423) She feels like she can't breathe; she has pains in her chest; she sweats, gets nervous, and shakes. (Tr. 423) If she gets an attack, she does breathing techniques. (Tr. 424) She tried to kill herself with Ativans in 2003, so she cannot get medication to treat the attacks. (Tr. 424) She gets attacks two to three times a month. (Tr. 424) They last 20 minutes to an hour and a half or longer. (Tr. 424) Stress brings on the attacks. (Tr. 424-425) Every few months she has a bout of depression when she cries a lot and stays in bed a lot. (Tr. 425)

CLAIM EVALUATION

Social Security Administration (SSA) regulations require that disability claims be evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. The first step requires a determination of whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If so, then the claimant is not disabled, and benefits are denied. *Id.*

If the claimant is not engaged in substantial gainful activity, the ALJ proceeds to step two, which requires a determination of whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). In making a determination at step two, the ALJ uses medical evidence to consider whether the claimant's impairment significantly limits or restricts his or her physical or mental ability to do basic work activities. *Id.* If the ALJ concludes the impairment is not severe, the claim is denied. *Id.*

Upon a finding of severity, the ALJ proceeds to step three, which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so limiting as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir. 1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity (RFC)[1] to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If yes, then the claim is denied. *Id.* If the claimant cannot perform any past relevant work, then the ALJ must move to the fifth step, which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

### The ALJ's Findings

At step one of the disability analysis, ALJ Davis found Denunzio "has not engaged in substantial gainful activity since November 1, 2009, the alleged onset date. . . ." (Tr. 389) At step two, he found Denunzio "has the following severe impairments: anxiety disorder; mood disorder. . . ." (Tr. 389)

At step three, the ALJ found Denunzio's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. (Tr. 390)

The ALJ then analyzed Denunzio's residual functional capacity (RFC). He found "the claimant had the residual functional capacity to perform the full range of work at all exertional

---

[1] Residual functional capacity is defined as that which an individual can still do despite his or her limitations. 20 C.F.R. §§ 404.1545, 416.945.

- 8 -

1  levels but with the following non-exertional limitations: limited to simple repetitive tasks;
2  occasional ability to perform complex tasks; and occasional interaction with the general public."
3  (Tr. 392)

4  At step four, the ALJ found Denunzio is unable to perform any past relevant work. (Tr.
5  398) At step five, the ALJ found, based on the testimony of the vocational expert, that,
6  considering her age, education, work experience, and residual functional capacity, Denunzio
7  can work as an assembler of small products, DOT: 706.684-022, a production assembler, DOT:
8  706.687-010, or a car washer, DOT: 915.663-010. (Tr. 399)

STANDARD OF REVIEW

To qualify for disability benefits the claimant must demonstrate, through medically acceptable clinical or laboratory standards, an inability to engage in substantial gainful activity due to a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her] or whether [she] would be hired if [she] applied for work." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g), 1383(c)(3). The decision to deny benefits "should be upheld unless it contains legal error or is not supported by substantial evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is "more than a mere scintilla but less than a preponderance." *Id.*

"Where evidence is susceptible to more than one rational interpretation, the [Commissioner's] decision should be upheld." *Orn*, 495 F.3d at 630. "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.*

The Commissioner need not accept the claimant's subjective testimony of disability, but if she decides to reject it, she must justify her decision. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009). "[W]ithout affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing." *Id.* "If an ALJ finds that a claimant's testimony relating to the intensity of [her] pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." *Id.* "The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Id.* "In this regard, questions of credibility and resolutions of conflicts in the testimony are functions solely of the [Commissioner]." *Id.*

Discussion: Treating Physician

Denunzio first argues that the ALJ improperly discounted the opinion of disability given by her treating physician, Steven J. Bupp, M.D. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are [ordinarily] given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and convincing reasons for doing so. *Id.* The ALJ may reject the treating physician's contradicted opinion only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). In this case, Bupp's opinion of disability is contradicted by the medical opinions of the testifying medical consultant, the examining consultant, and the non-examining state agency physician. Accordingly, the ALJ's decision to discount Bupp's opinion must be supported by "specific and legitimate reasons

supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996) (punctuation modified). The court finds that the ALJ failed to do so, and Bupp's opinions were discounted erroneously.

The ALJ explained that he gave Bupp's opinions "[l]ittle weight" because "evidence indicated medications were helpful, her mood was 'ok', memory was intact, and she was 'stable.'" (Tr. 394-395) Furthermore, the medical records indicated that Denunzio "functioned fairly well, but with some episodes of increased symptoms. . . ." The ALJ, however, misunderstands Denunzio's condition. That is why he finds inconsistency in the record where none exists.

Denunzio's functional limitations are not constant. She experiences periods of relatively high functioning punctuated by episodes of debilitating impairment. Bupp characterized her impairment as a "[s]everely brittle bipolar condition," and the medical record supports that characterization. (Tr. 899) For example, on March 18, 2010, Bupp noted that Denunzio's symptoms were "stable" and that "the meds help a lot." (Tr. 266) Nevertheless, he also noted that her symptoms "range moderate to severe at times." (Tr. 266) On September 21, 2010, Bupp found Denunzio "stable" and "doing well overall" with "no psych problems beyond baseline." (Tr. 272) Nevertheless, he added this cautionary note, "Still a challenge every hour." (Tr. 272) Accordingly, it is not unexpected that the medical record contains reports that her medications were helpful or that her mood was "ok" or that she was "stable." She might be "stable" for periods of a week or two, but unfortunately she does not stay that way. Bupp's analysis of Denunzio's condition is not inconsistent with the medical record. *See* (Tr. 305)

The ALJ further noted that in Exhibit 16F/1, (Tr. 626), "claimant denied anxiety and depression." (Tr. 395) Taken in context, this report does not contradict Bupp's assessment of Denunzio's mental impairment. On April 1, 2016, Denunzio was examined by Basel Skeif, M.D., for a follow-up examination after recent hospitalization for pericarditis. (Tr. 626-628) In a rather lengthy list of possible symptoms, she reported, among other things, "[n]o anxiety, no depression, and no sleep disturbances." (Tr. 627) The ALJ seems to believe that this statement contradicts Bupp's assessment of Denunzio's chronic mental impairment. It does not.

Denunzio was being seen in a follow-up to hospitalization for pericarditis. She was seeing a heart specialist, not a psychiatrist. Accordingly, when she stated she had "[n]o anxiety, no depression, and no sleep disturbances," she was commenting on her present condition. She was not assessing her long term mental impairment. The fact that Denunzio was experiencing no anxiety, depression, or sleep disturbances in the last week of March 2016 is not a legitimate reason to discount Bupp's evaluation of Denunzio's mental condition.

The ALJ also noted that the record contains "consistent" reports that Denunzio had a GAF score of 55. (Tr. 395) A GAF (global assessment of functioning) score of 51-60 indicates "Moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning." (Tr. 395) The ALJ noted that "GAF assessments are not correlated to the regulatory definition of disability, have not been shown to be objective, and cannot be directly used to assess disability." (Tr. 395) Nevertheless, the ALJ seemed to believe that GAF scores of 55 are inconsistent with Bupp's opinion of disability. They are not.

As the court noted above, Denunzio's functional limitations are not constant. Denunzio's GAF score of 55 is indicative of her baseline mental state. It is not indicative of her frequent episodes of debilitating symptoms. For example, on September 25, 2014, Denunzio appeared for a routine appointment. (TR. 872) She reported poor sleep, anxiety attacks that are "twice as bad and occur daily," and "brain scatter [that] still happens (every day)." (Tr. 872) Bupp noted that "[h]er [symptoms] are moderate to severe in nature (worse with legal pressure)." *Id.* Nevertheless, he rated her GAF score as 55, moderate symptoms. (Tr. 872) This score is indicative of her mental state when her acute symptoms have subsided and she is able to report for medical treatment. The numerous GAF scores of 55 in the medical record are not inconsistent with Bupp's opinion of disability.

The ALJ notes that Bupp's opinion of disability "was contradicted by the examining and consulting physician opinions." (Tr. 395) That is certainly true. The ALJ, however, seems to imply that this contradiction is a legitimate reason to discount Bupp's opinions. That is not correct. The contradiction does, however, trigger a different standard of review. If the treating physician's opinions are uncontradicted, the ALJ may disregard them only after giving clear and

- 12 -

convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996). The ALJ may reject a treating physician's *contradicted* opinion if he sets forth "specific and legitimate reasons supported by substantial evidence in the record." *Id.* (punctuation modified).

Here, the treating physician's opinions are contradicted by the opinions of the examining and consulting physicians. Therefore, the ALJ can discount the treating physician's opinions if he advances "specific and legitimate reasons supported by substantial evidence in the record." *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1996). But the fact that a contradiction between the opinions exists is not a specific and legitimate reason all by itself.

The ALJ further noted that Bupp's opinion as to Denunzio's marked functional limitations are contradicted by Marks' observations that Denunzio showed no problems with concentration on the day of his examination. (Tr. 397) As the court noted above, however, this is not a contradiction. Denunzio's symptoms wax and wane. They are not constant. That is why the Commissioner ordinarily gives treating physicians deference. They can observe the claimant's symptoms over a long period of time, something that a consulting examiner is unable to do.

The Commissioner argues that Bupp's opinion of disability may be discounted because he expressed his opinions "on a check-the-box form with little explanation for the basis of the rating." (Doc. 20, p. 18) Also, the Commissioner argues that Bupp's opinion can be discounted because it was based in part of Denunzio's self-reporting of symptoms and limitations, and she is not a credible source. *Id.* Neither of these arguments was advanced by the ALJ, and therefore this court cannot consider them. *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). The ALJ did note that Bupp's opinions were based "on claimant's own report, reports of others and direct observation." (Tr. 395) But he did not argue that this was a reason for discounting Bupp's opinions.

Discussion: Claimant's Testimony

Denunzio further argues that the ALJ erred when he improperly discounted her testimony about the severity of her symptoms.

- 13 -

1    If there is medical evidence of underlying impairments "and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (punctuation modified). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." *Id.* "In evaluating the claimant's testimony, the ALJ may use ordinary techniques of credibility evaluation." *Id.* "For instance, the ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct, unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.*

In this case, the ALJ found that while "claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (Tr. 393-394) The court finds that while there appear to be inconsistencies in the record, these inconsistencies result from the capricious nature of her impairment and do not constitute clear and convincing reasons for discounting Denunzio's subjective testimony of disability.

As the court noted above, Denunzio's symptoms wax and wane. Therefore, it is to be expected that the medical record will contain numerous entries indicating her symptoms are "stable," she is doing well, and she experiences no side effects from her medications. Unfortunately these periods are punctuated by episodes of increased anxiety and recurring panic attacks. In fact, the ALJ seemed to acknowledge this. At one point in his decision, the ALJ noted that "claimant reported she was doing well and had no side effects from her medications." (Tr. 394) Nevertheless, in the next sentence, the ALJ reported that "[s]he had some episodes of increased anxiety and panic attacks" (Tr. 394) And then, the ALJ conceded that "[n]ew medication caused lightheadedness and gastrointestinal issues, and had to be changed." (Tr. 394)

- 14 -

1    In his decision, the ALJ highlighted those entries where Denunzio is reported to be
2    "stable" or "doing well." They certainly exist, but they do not justify his decision to discount
3    her testimony as to the severity of her symptoms. *See, e.g., Garrison v. Colvin*, 759 F.3d 995,
4    1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error
5    to reject a claimant's testimony merely because symptoms wax and wane in the course of
6    treatment.").

7    Similarly, the ALJ concludes that Denunzio's record of daily activities is inconsistent
8    with her subjective testimony of disability. According to the ALJ, "[t]he evidence consistently
9    indicates that the claimant has no problems with personal care, and she is able to cook, clean,
10   take care of her dog, go outside, do her shopping, and manage her finances." (Tr. 393) "She
11   reads and watches television daily when not in a manic stage, but sometimes it is hard for her
12   to think and her mind races or she is very sleepy." (Tr. 393) The evidence, however, is not so
13   black and white.

14   Denunzio testified that she rises "between 7:00 and 9:00." (Tr. 68) She said, "If it's a
15   good day, I'll shower, get dressed. I'll go outside, walk, go to the store, come home. On a bad
16   day I just stay in bed and sleep." (Tr. 68)

17   She reported that she cleans the house and does laundry but explained that "[s]ometimes
18   I'll wait 'till it piles up to more than two weeks, or I have nothing else to wear." (Tr. 68) If she
19   needs to go to the store, her roommate will go with her. (Tr. 68) She can stay in the store for
20   45 minutes, but if it is too crowded she says, "then I have to leave because it's too much for me
21   to absorb." (Tr. 69) "I can't breathe, I feel like everybody's closing in on me and I get out,
22   break out into hot sweats." (Tr. 69)

23   The ALJ is correct to say that Denunzio can "cook, clean, take care of her dog, go
24   outside, do her shopping and manage her finances." The record also indicates, however, that
25   she cannot perform these tasks on a particular schedule. She can perform them if she is having
26   a good day. If she is having a bad day, she cannot. The fact that she can accomplish these
27   tasks, symptoms permitting, is not evidence that she is able to work. Neither is it clear and

1  convincing evidence of the type that would justify rejecting Denunzio's testimony about the
2  severity of her symptoms. *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).

3  In her response brief, the Commissioner advances other reasons why Denunzio's
4  testimony should be discounted. For example, she argues that Denunzio's received only
5  conservative treatment for her mental impairment. This court, however, may not consider
6  arguments that were not made by the ALJ. *See Garrison v. Colvin*, 759 F.3d 995, 1010 (9th
7  Cir. 2014).

8  The ALJ improperly discounted the treating physician's opinion of disability and
9  improperly discounted Denunzio's subjective testimony of the severity of her symptoms. The
10 final decision of the Commissioner must be reversed. Ordinarily, if the Commissioner is
11 reversed, the court should remand for further administrative proceedings. The court may,
12 however, remand for payment of benefits if "(1) the record has been fully developed and further
13 administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide
14 legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion;
15 and (3) if the improperly discredited evidence were credited as true, the ALJ would be required
16 to find the claimant disabled on remand." *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir.
17 2014).

18 Here, all three requirements are fulfilled. "The record has been fully developed and
19 further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at
20 1020. In fact, the record contains two hearing and two ALJ decisions. As the Ninth Circuit
21 observed in *Garrison*, "our precedent and the objectives of the credit-as-true rule foreclose the
22 argument that a remand for the purpose of allowing the ALJ to have a mulligan qualifies as a
23 remand for a 'useful purpose' under the first part of credit-as-true analysis." *Garrison v. Colvin*,
24 759 F.3d 995, 1021 -1022 (9th Cir. 2014)

25 Second, the ALJ failed to provide specific and legitimate reasons for discounting the
26 treating physician's opinion of disability and failed to provide clear and convincing evidence
27 to discount Denunzio's own testimony. *See above*. Third, if Bupp's opinion and Denunzio's
28 testimony were credited as true, Denunzio necessarily would be found disabled. The vocational

- 16 -

expert testified that if Denunzio had the functional limitations described by Bupp, then Denunzio would be disabled. (Tr. 419-421)

All three parts of the *Garrison* test are fulfilled. Furthermore, the court has examined the entire record and finds no reason to seriously doubt that Denunzio is disabled. *See Garrison*, 759 F.3d at 1022-23. Accordingly, this case will be remanded for payment of benefits. *See also Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.").

IT IS ORDERED that the final decision of the Commissioner is reversed. The case is remanded for payment of benefits.

The Clerk of the Court is directed to prepare a judgment and close this case.

DATED this 9th day of April, 2018.

*Leslie A. Bowman*

Leslie A. Bowman
United States Magistrate Judge